# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| In re: | ) | Chapter 13 |
| | ) | |
| Zipporah Legarde | ) | Case No. 22-12184-AMC |
| aka Dalana Minor | ) | |
| | ) | |
| Debtor. | ) | |

**CHRISTOPHER HELALI'S MOTION TO APPROVE A SETTLEMENT UNDER
RULE 9019 OF THE FEDERAL RULES OF BANKRUPTCY PROCEDURE**

Mr. Christopher Helali, an unsecured creditor, by and through his undersigned counsel, hereby moves pursuant to Rule 9019(a) of the Federal Rules of Bankruptcy Procedure, Local Rule 9019-2(n)(6), and as directed by the Court during the June 27, 2023 hearing (*see* ECF No. 89), for approval of the March 23, 2023 mediated Settlement Term Sheet between himself, Debtor Zipporah Legarde and Debtor's husband, Mr. Frank Cardillo (collectively, the "Settlement Parties" or the "Parties").  This Motion is based on the following Memorandum of Law.  A proposed Order is attached.  Mr. Helali states respectfully as follows:

## MEMORANDUM OF LAW

### INTRODUCTION AND FACTUAL BACKGROUND

In June 2021, Mr. Helali sued Ms. Legarde and Mr. Peter Soeller for defamation and defamation *per se* in the United States District Court for the District of Vermont (the "Defamation Lawsuit").  The Defamation Lawsuit is pending before United States District Judge Christina Reiss, who sits in Burlington.

A copy of Mr. Helali's Complaint in the Defamation Lawsuit appears in this Court's Docket at Claim 4, Part 2 (filed Oct. 27, 2022) ("Defamation Complaint").

Mr. Helali alleges in the Defamation Complaint that Ms. Legarde engaged in willful and malicious tortious conduct toward him that injured him personally. *See* Defamation Complaint ¶¶ 1, 51, 98, 99, 158, 165.

Mr. Helali's Motion dated October 27, 2022 to dismiss this Chapter 13 case or, in the alternative, for relief from the automatic stay is pending before this Court (the "Motion to Dismiss"). *See* ECF Nos. 21, 33, 37.

During the November 29, 2022 telephone hearing on Mr. Helali's Motion to Dismiss, and in response to Mr. Helali's position that Debtor does not have regular income and does not qualify for Chapter 13, Debtor's then counsel, Michelle Lee, Esq. ("Ms. Lee") indicated that she would convert the case to Chapter 7.

Mr. Cardillo is Debtor's sole source of income, and Debtor used his income to support her Chapter 13 Petition. *See* Official Form 106I, ECF No. 11, filed Sept. 7, 2022 (stating that Debtor is a non-employed homemaker who earns $0.00 per month and that Mr. Cardillo is an employed software engineer who earns $14,895.83 in gross monthly income).

Shortly after the November 29th hearing, Ms. Lee and Mr. Helali's undersigned counsel agreed to mediate prior to the Debtor's planned conversion to Chapter 7.

During December 2022 and early January 2023, Ms. Lee and Mr. Helali's undersigned counsel attempted to locate a potential mediator.

On January 13, 2023, attorney Gary F. Seitz, Esq. ("Mr. Seitz" or the "Mediator") agreed to serve as the Mediator.

A mediation session took place via Zoom video conference on March 23, 2023 (the "Mediation Session"). The Mediation Session began at 12:00 PM and lasted until approximately 7:30 PM.

At the conclusion of the Mediation Session, Mr. Helali, Ms. Legarde and Mr. Cardillo signed a two-page, single-spaced typewritten document dated March 23, 2023 – which Mr. Seitz prepared – with eleven numbered paragraphs entitled, "Settlement Term Sheet."

*Per* the Court's instruction during the April 18, 2023 telephone hearing, Mr. Helali's undersigned counsel submitted the Settlement Term Sheet to the Court via an April 18th (12:18 PM) electronic mail message to Courtroom Deputy Joan Ranieri.  Briefly summarized, the Settlement Term Sheet provides as follows:

- Mr. Cardillo will pay Mr. Helali $18,000 over 36 months in $500 installments;

- Ms. Legarde will convert her Chapter 13 case to Chapter 7 to dismiss her other debts;

- Ms. Legarde will scrub the Internet of her disparaging online statements concerning Mr. Helali;

- Ms. Legarde agrees never to disparage Mr. Helali again;

- The Parties agree not to initiate contact with each other or any of their employers, prospective employers, family members, educational institutions, business partners, etc.;

- The parties agree not to discuss their relationship with each other and their shared history of legal disputes in any publications or online posts;

- Mr. Helali will not join any local Pennsylvania branches or divisions of any political organizations;

- Ms. Legarde will not join any local Vermont branches or divisions of any political organizations;

- Mr. Helali will dismiss the Defamation Lawsuit against Ms. Legarde with prejudice;

- The Parties agree to a general mutual release of all claims whether or not raised in the Defamation Lawsuit;

- The Settlement Term Sheet is confidential, other than necessary to effectuate the Parties' intent; and

- Any public comments about the Defamation Lawsuit are limited to "The disputed was amicably resolved."

On March 24, 2023, Mr. Seitz filed his Mediator's Certificate of Compliance in which he certified that "[a] settlement of this matter **has** been reached" and that:

> A confidential settlement term sheet setting forth the material terms was signed by all parties. Counsel for the parties will prepare a confidential settlement agreement and file a stipulation regarding the resolution of pending matters in bankruptcy court with the Clerk of Court.

ECF No. 54 (emphasis in the original).

## STANDARD OF REVIEW

"Under Bankruptcy Rule 9019, the Court has authority to approve a compromise of a claim, provided the debtor, trustee and creditors are given twenty[-one] days' notice of the hearing on approval of the compromise or settlement." *In re Covenant Partners, L.P.*, 555 B.R. 490, 492-93 (Bankr. E.D. Pa. 2016) (Raslavich, J.) (citing F.R.B.P. 2002(a)(3), 9019(a)). "Approval of the settlement lies within the sound discretion of the Bankruptcy Court." *Id.* "In deciding whether to approve a settlement, the Court must determine whether the proposed settlement is in the best interests of the estate." *Id.* "The Third Circuit has held that this particular process of bankruptcy court approval requires the Court to assess and balance the value of the claim that is being compromised against the value to the estate of the acceptance of the compromise proposal." *Id.* (citing *In re Martin*, 91 F.3d 389, 393 (3d Cir. 1996)).

The Third Circuit recognizes four criteria a court should consider in striking this balance: "(1) the probability of success in litigation; (2) the likely difficulties in collection; (3) the complexity of the litigation involved, along with the expense, inconvenience and delay necessarily attending it; and (4) the paramount interest of creditors." *Covenant Partners*, 555 B.R. at 493 (citing cases).

## LEGAL ARGUMENT

### POINT I

### THE SETTLEMENT TERM SHEET IS GOVERNED BY PENNSYLVANIA LAW.

This Chapter 13 case is pending in Pennsylvania and the March 23, 2023 mediation session effectively took place in Pennsylvania, where the parties' chosen mediator is based. As such, Pennsylvania law applies to the Settlement Term Sheet. *See Thomas v. Lockheed Martin Aeroparts, Inc.*, No. 3:13-166, 2015 WL 1285822, at *2 (W.D. Pa. Mar. 20, 2015) ("A settlement agreement is a contract and is interpreted according to local law.") (quoting *Wilcher v. City of Wilmington*, 139 F.3d 366, 372 (3d Cir. 1998)).

In Pennsylvania, "contracts are binding under Pennsylvania law 'without regard to whether the terms were fully understood by the signer.'" *Talbott v. Credit Acceptance Corp.*, No. 5:21-CV-05133, 2022 WL 4793126, at *5 (E.D. Pa. Oct. 3, 2022) (brackets omitted) (quoting *Simeone v. Simeone*, 525 Pa. 392, 400, 581 A.2d 162, 166 (1990)). *See generally MZM Constr. Co., Inc. v. New Jersey Bldg. Laborers Statewide Benefit Funds*, 974 F.3d 386, 403 (3d Cir. 2020) ("if all it took to avoid a signed contract was to claim ignorance of its content or legal effect, contracts would not be worth the paper on which they are written") (internal quotes omitted), quoted in *Talbott*, 2022 WL 4793126, at *5.

### POINT II

### THE SETTLEMENT TERM SHEET IS A BINDING AND ENFORCEABLE CONTRACT.

1. **Settlement Agreements are Binding Contracts.**

"An agreement to settle a lawsuit, voluntarily entered into, is binding upon the parties, whether or not made in the presence of the Court, and even in the absence of a writing." *Ismail v. Interstate Res. Inc*, 842 F. App'x 821, 823-24 (3d Cir. 2021) (applying Pennsylvania law). Moreover, Pennsylvania law is clear that "parties may bind themselves contractually although

-5-

they intend, at some later date, to draft a more formal document." *Ismail*, 842 F. App'x at 824 (internal quotation marks omitted) (citing cases).

In *Ismail*, the Third Circuit affirmed the enforcement of an *oral* settlement agreement, stating that "[t]he District Court properly determined that the oral agreement reached on April 3, 2019, established the terms of the settlement. The transcript from the settlement conference makes clear that the material terms of the parties' agreement did not contemplate revocation in any form." *Id.* at 824.

Having entered into a binding written settlement agreement, the signatories cannot change their minds and 'reject' the settlement. *Cf. Frompovicz v. Niagara Bottling, LLC*, No. CV 18-0054, 2020 WL 6118762, at *4 (E.D. Pa. Oct. 16, 2020) ("Permitting parties to void settlement agreements on a whim, because the agreement becomes unpalatable or the parties become greedier, would work a significant deterrence contrary to the federal policy of encouraging settlement agreements.") (internal quotation marks omitted); and *McCune v. First Jud. Dist. of Pa. Prob. Dep't*, 99 F. Supp. 2d 565, 566 (E.D. Pa. 2000) ("The Settlement Agreement is still binding, even if it is clear that a party had a change of heart between the time he agreed to the terms of the settlement and when those terms were reduced to writing.").

There is extensive case law applying Pennsylvania law holding that parties are bound contractually to a settlement. See, for example:

- ***Shell's Disposal & Recycling, Inc. v. City of Lancaster*, 504 F. App'x 194, 201 (3d Cir. 2012)** (even though trash collector and city had not formalized their written agreement which had been entered into during mediation, they had orally agreed to its essential terms resolving their dispute over a newly enacted ordinance, as required to enter into a binding and enforceable contract; the parties had verbally manifested assent to each term documented in their written agreement, and terms were sufficiently definite to be enforced);

- ***Lee v. Sch. Dist. of Philadelphia*, No. CV 18-196, 2018 WL 7287874, at *2 (E.D. Pa. Nov. 1, 2018)** ("the parties are bound by the terms that they agreed to in the term sheet") (citing extensive case law), *rep. and rec. adopted*, 2019 WL 568933 (E.D. Pa. Feb. 11, 2019);

- ***Thomas v. Lockheed Martin Aeroparts, Inc.***, **No. 3:13-166, 2015 WL 1285822, at \*3 (W.D. Pa. Mar. 20, 2015)** (enforcing settlement "term sheet" entered into during mediation that summarized the "material terms" of the parties' agreement); and

- ***Dehainaut v. Calif. Univ. of Pa.***, **No. 2:10-CV-899, 2011 WL 13176164, at \*8 (W.D. Pa. July 21, 2011)** (enforcing handwritten "Memo of Agreement" entered into at the conclusion of mediation and ordering the parties to "follow the terms of the agreement and 'execute full release and settlement agreement' under the terms agreed to by the parties" in the Memo of Agreement), *aff'd*, 490 F. App'x 420 (3d Cir. 2012).

In *Roscoe v. Watco Companies, LLC*, No. 15-CV-2118, 2018 WL 8345101 (E.D. Pa. Nov. 9, 2018), *report and recommendation adopted*, 2019 WL 2211855 (E.D. Pa. May 20, 2019), the parties signed a mediator-prepared handwritten "Settlement Term Sheet" after approximately nine hours of mediation. A few days after mediation, Defendants provided Plaintiff's counsel with a proposed release. Plaintiff refused to sign the release and refused to comply with the Settlement Term Sheet. *See* 2018 WL 8345101, at \*1. Thereafter, Plaintiff asked the Court to invalidate the Settlement Term Sheet. *Id.* at \*2.

After citing numerous cases addressing the subject of when an agreement to settle a lawsuit is binding (*id.* at \*7), the *Roscoe* Court rejected Plaintiff's argument and held that the Settlement Term Sheet signed at mediation was binding even though it contemplated the drafting of future documents, including a release:

> The Term Sheet signed on December 5, 2017, is a binding contract. With any contract, an agreement to settle a lawsuit binds a party if he voluntarily entered into it. Here, after approximately nine hours of mediation, the parties mutually agreed and assented to the settlement terms and conditions. Plaintiff himself assented to the terms and conditions of the settlement agreement, voluntarily entered into the agreement, and signed the completed Term Sheet. I conclude that the parties satisfied the only essential prerequisite for a binding settlement agreement: the parties mutually assented to the terms and conditions of the settlement. Thus, I conclude that a binding contract was created on December 5, 2017.

*Roscoe*, 2018 WL 8345101, at \*7 (citations, quotation marks and brackets omitted).

### 2. The Settlement Agreement is Supported by Good and Valuable Consideration.

Whether consideration exists to support a contract is a question of law. *Crown Coal & Coke Co. v. Powhatan Mid-Vol Coal Sales, L.L.C.*, 929 F. Supp. 2d 460, 470 (W.D. Pa. 2013). As an initial and dispositive matter, the Settlement Term Sheet provides Ms. Legarde and Mr. Cardillo with good and valuable consideration in exchange for the $18,000 in payments Mr. Cardillo contracted to make to Mr. Helali. *See* Settlement Term Sheet ¶¶ **4** (parties agree not to initiate contact with each other); **5** (parties agree not to disparage each other); **9** (mutual general release); and **10** (confidentiality).

Moreover, in a three-way contract such as the Settlement Term Sheet, the fact that one contracting party (Mr. Cardillo) pays money to another (Mr. Helali) at least in part on behalf of a third contracting party (Ms. Legarde) to release her from liability means there does not need to be consideration running directly to the payor (Mr. Cardillo) for the contract to be enforceable. *See generally Blake-Cadillac Oldsmobile, Inc. v. Cackovic*, 54 Pa. D. & C.2d 160, 165, 1971 WL 17979, at *4 (Pa. Ct. Com. Pl. 1971) ("**an agreement to release a third party from liability is a valid consideration for the obligation incurred by the parties securing the release**") (emphasis added) (citing authorities); and David J. Lanciotti, 17 SUMM. PA. JUR. 2D COMMERCIAL LAW § 12:122 (2d ed.) (same) (citing *Cackovic*, *supra*) (Westlaw Mar. 2023 Update). *Cf.* RESTATEMENT (THIRD) OF SURETYSHIP & GUARANTY § 9(2)(a)-(d) (Am. Law. Inst. 1996) (listing in the disjunctive four scenarios in which a secondary obligation does not fail for lack of consideration, including: (b) "the promise of the secondary obligor is in writing and signed by the secondary obligor and recites a nominal purported consideration"; and (d) "the secondary obligor should reasonably expect its promise to induce action or forbearance of a substantial character on the part of the obligee or a third person, and the promise does induce such action or forbearance").

Lastly, even if the Settlement Term Sheet were not a binding and enforceable contract (*but see* above), the law of detrimental reliance would make enforceable Mr. Cardillo's 'promise' to pay Mr. Helali $18,000.00. This is so because Mr. Helali reasonably relied to his detriment on Mr. Cardillo's 'promise' of payments when Mr. Helali agreed in the Settlement Term Sheet to: (A) dismiss his Vermont defamation case against Ms. Legarde; (B) release Ms. Legarde and Mr. Cardillo from future claims; (C) not to disparage Ms. Legarde and Mr. Cardillo, etc., and enforcement of Mr. Cardillo's payment 'promise' is necessary to prevent injustice to Mr. Helali. *See generally Ruggiero v. Nocenti*, No. CV 18-3047, 2020 WL 7133767, at *1 (E.D. Pa. June 30, 2020) ("The elements of detrimental reliance are (1) a promise to a promisee, (2) which the promisor should reasonably expect will induce action by the promisee, (3) which does induce action, and (4) which should be enforced to prevent injustice to the promise.").

In sum, the March 23, 2023 Settlement Term Sheet is a binding and enforceable contract supported by good and valuable consideration.

## POINT III

### THE SETTLEMENT TERM SHEET IS IN THE BEST INTERESTS OF THE ESTATE.

Mr. Helali submits respectfully that the four *Martin* factors courts use to determine whether a settlement is in the Estate's best interests all favor approval of the Settlement Term Sheet.

**1.     Probability of Success in Litigation.**

The first *Martin* factor is probability of success in litigation. Mr. Helali has a strong probability of success against Ms. Legarde in the Defamation Lawsuit. As detailed in the Defamation Complaint, following Mr. Helali's efforts to obtain a relief-from-abuse order against Ms. Legarde, she embarked on a willful, malicious, relentless and vicious defamation campaign against him, attempting to make good on her documented threats to "fuck up" Mr. Helali's career

-9-

and "destroy[]" his life. *See* Defamation Complaint ¶¶ 47-48, 51. This defamation campaign included demonstrably false allegations that Mr. Helali raped her. *Compare* Defamation Complaint ¶¶ 52-57 (in February and March 2021, Ms. Legarde published statements on Twitter accusing Mr. Helali of raping her) with D. Seff's June 12, 2023 letter brief to the Court, ECF No. 83, at 5 (in June 2019, Ms. Legarde admitted to the Somerville (Mass.) Police Department that her sexual relations with Mr. Helali were "consensual").

In short, the probability-of-success factor favors approving the Settlement Term Sheet as in the Estate's best interests.

### 2. The Likely Difficulties in Collection.

While it is unclear what (if any) difficulties Mr. Helali might encounter in trying to collect against Ms. Legarde following a successful Defamation Lawsuit outcome, this second *Martin* factor is moot because the Settlement Term Sheet provides for settlement payments from Ms. Legarde's husband, Mr. Cardillo, and not from Ms. Legarde herself.

### 3. The Complexity of the Litigation Involved, Along with the Expense, Inconvenience and Delay Necessarily Attending It.

This third *Martin* factor strongly favors approving the Settlement Term Sheet as in the Estate's best interests. If the Defamation Lawsuit goes to trial, there would be many complex issues, in part because there is another Defendant in addition to Ms. Legarde (Mr. Peter Soeller) who lives in Connecticut, and there are numerous fact witnesses who would be called to testify who reside in Vermont, Massachusetts and other states. There is also a lot of expensive discovery to complete, as Ms. Legarde filed for bankruptcy protection on the virtual eve of her long-scheduled deposition in Vermont.

### 4. The Paramount Interest of Creditors.

This fourth *Martin* factor strongly favors approving the Settlement Term Sheet as in the Estate's best interests. Mr. Helali has the largest claim by far against the Estate, and the

Settlement Term Sheet resolves his claim for a relatively nominal amount, and it does so with payments from Ms. Legarde's husband, Mr. Cardillo, rather than Ms. Legarde herself. In other words, Ms. Legarde's other creditors would benefit from Court approval of the Settlement Term Sheet, as it preserves all of Ms. Legarde's assets for distribution to creditors other than Mr. Helali.

### POINT IV

#### TO MINIMIZE THE NEED FOR FUTURE LITIGATION, THIS COURT SHOULD RETAIN JURISDICTION OVER THE SETTLEMENT TERM SHEET AND INCORPORATE ITS TERMS INTO AN APPROVAL ORDER.

Ms. Legarde and Mr. Cardillo, though their counsel, expended tremendous resources attempting to invalidate the Settlement Term Sheet. *See* ECF Nos. 63, 65, 76, 77, 87, 88. These efforts forced Mr. Helali to expend tremendous resources defending the Settlement Term Sheet's enforceability. *See* ECF Nos. 56, 57, 60, 66, 82, 83.

And now, after having forced Mr. Helali and his counsel to fend off all manner of baseless arguments that the Settlement Term Sheet is unenforceable, the lawyers representing Ms. Legarde and Mr. Cardillo abandoned ship (in the case of Ms. Lee, *see* ECF No. 67) or, in Ms. Baskin and Ms. Lednicky's cases, seek to abandon ship (ECF Nos. 91-93).

In light of history, Mr. Helali has well-founded serious concerns about Ms. Legarde and Mr. Cardillo's willingness to honor the Settlement Term Sheet they signed four months ago. He dreads having to sue one or both of them to enforce the Settlement Term Sheet, including the requirement that Mr. Cardillo pay Mr. Helali $18,000.00 in $500.00 monthly installments over the next 36 months. (Mr. Cardillo is Debtor's sole source of income, and Debtor used his income to support her Chapter 13 Petition. *See* Official Form 106I, ECF No. 11, filed Sept. 7, 2022 (stating that Debtor is a non-employed homemaker who earns $0.00 per month and that Mr. Cardillo is an employed software engineer who earns $14,895.83 in gross monthly income).)

-11-

Accordingly, Mr. Helali respectfully requests that this Court expressly retain jurisdiction over the Settlement Term Sheet and incorporate its terms into an approval order. That way, if it becomes necessary, Mr. Helali can enforce the Settlement Term Sheet in this Court. *See generally Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 381 (1994) (court has power to enforce settlement agreement by "retaining jurisdiction" over settlement agreement and/or by "incorporating the terms of the settlement agreement in the order"); *In re Phar-Mor, Inc. Sec. Litig.*, 172 F.3d 270, 274 (3d Cir. 1999) (same) (citing *Kokkonen*, 511 U.S. at 381). *See, e.g., In re Sundquist*, 580 B.R. 536, 553 (Bankr. E.D. Cal. 2018) ("The court has discretion to 'retain jurisdiction' over the settlement agreement, which it will do in this instance.") (citing *Kokkonen*, 511 U.S. at 381); and *Stratton v. Glacier Ins. Administrators, Inc.*, No. 1:02 CV 6213 OWW DLB, 2006 WL 3388528, at *9 (E.D. Cal. Nov. 22, 2006) ("The terms of the parties' settlement agreements attached to Stratton's motion for final court approval are incorporated herein. This Court shall retain jurisdiction over [the] plaintiff and the settling parties to ensure compliance with the terms of the settlement and the orders of this Court and to enforce all of the relief, including the permanent bar and injunctive relief, requested and granted in this case.") (citing *Kokkonen*, 511 U.S. at 381, and other authorities).

In sum, to minimize the need for future litigation, Mr. Helali respectfully requests that this Court expressly retain jurisdiction over the Settlement Term Sheet and incorporate its terms into an approval order. A proposed Order is attached.

### LOCAL RULE 9014-3(b)(2) STATEMENT

Mr. Helali does not consent to the entry of a final order or judgment by the Court if it is determined that the Court, absent consent of the parties, cannot enter a final order or judgment consistent with Article III of the United States Constitution.

## CONCLUSION

For the reasons stated above, the Settlement Term Sheet is a binding contractual agreement governed by Pennsylvania law, and it is in the best interests of the Estate for this Court to approve the Settlement Term Sheet.  Finally, to minimize the need for future litigation, this Court should expressly retain jurisdiction over the Settlement Term Sheet and incorporate its terms into the approval order.  A proposed Order is attached.

Dated: July 24, 2023
      Burlington, Vermont

Respectfully submitted,

MSK ATTORNEYS

By: /s/ *Daniel A. Seff*
Daniel A. Seff, Esq.

275 College Street, P.O. Box 4485
Burlington, VT 05406-4485
Phone: 802-861-7000 (x1190)
Fax: 802-861-7007
Email: dseff@mskvt.com

*Attorneys for Christopher Helali*
(Admitted *pro hac vice*)