### UNITED STATES BANKRUPTCY COURT
### EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| IN RE | : | Chapter 13 |
| | : | |
| ZIPPORAH LEGARDE, | : | |
| | : | Bankruptcy No. 22-12184-AMC |
| DEBTOR | : | |
| _____ | : | |

Ashely M. Chan, United States Bankruptcy Judge

## OPINION

## I.    INTRODUCTION

Christopher Helali ("Mr. Helali"), an unsecured creditor in this case, seeks to enforce a settlement term sheet ("Settlement Term Sheet") that was signed by Mr. Helali, Zipporah Legarde ("Debtor"), and the Debtor's husband, Frank Cardillo Jr. ("Mr. Cardillo") during a mediation on the basis that the Settlement Term Sheet is a binding contract.

Ultimately, the Court finds that the Settlement Term Sheet is an enforceable binding contract, because the parties manifested an intent to be bound by the Settlement Term Sheet, the material terms contained in the Settlement Term Sheet are sufficiently definite to be enforceable, and all parties gave adequate consideration. Moreover, the Court finds that the Settlement Term Sheet can be approved under Federal Rule of Bankruptcy Procedure 9019(a) ("Bankruptcy Rule 9019") because the Settlement Term Sheet is fair and equitable.

## II.    FACTUAL AND PROCEDURAL BACKGROUND

By way of background, in June 2021, Mr. Helali sued the Debtor and one other defendant for defamation and defamation per se in federal court ("U.S. District Court") in Vermont ("Defamation Lawsuit"). ECF Case No. 22-12184 ("ECF") 56 Motion to

1

Enforce Settlement Agreement, Seff Declaration ("Seff Decl.") ¶ 3. In his Defamation

Lawsuit complaint, Mr. Helali alleged that the Debtor engaged in willful and malicious

tortious conduct toward him that injured him personally. *Id.* at ¶ 5.

On August 19, 2022, the Debtor filed a voluntary petition ("Voluntary Petition")

under chapter 13 of the Bankruptcy Code ("Chapter 13"). ECF 1 Voluntary Petition. On

September 7, 2022, the Debtor filed her chapter 13 statement of monthly income

("Statement of Income") indicating that her gross monthly income is $0 and that Mr.

Cardillo's gross monthly income is $14,895. ECF 12 Statement of Income at 1.

Also on September 7, 2022, Digital Federal Credit Union filed a proof of claim for

unsecured credit card debt in the amount of $2,743.32. Proof of Claim 1-1. On September

21, 2022, the U.S. Department of Education filed a proof of claim for unsecured

nondischargeable student loan debt in the amount of $18,829.88.[1] Proof of Claim 2-1. On

October 6, 2022, Midland Credit Management, Inc. filed a proof of claim for unsecured

debt related to a revolving credit line in the amount of $2,173.35. Proof of Claim 3-1. On

October 27, 2022, Mr. Helali filed a proof of claim for unsecured debt related to the

Defamation Lawsuit asserting that the amount of his claim is unknown but is at least

$525,000. Proof of Claim 4-1.

Also on October 27, 2022, Mr. Helali filed a motion to dismiss this Chapter 13 case

or, in the alternative, for relief from the automatic stay ("Motion to Dismiss"). Seff Decl.

¶ 6 (citing ECF No. 21). During the hearing on the Motion to Dismiss on November 29,

2022 ("November Hearing"), and in response to Mr. Helali's position that the Debtor

does not have regular income and does not qualify for Chapter 13, the Debtor's counsel,

---

[1] This claim was amended on May 11, 2023, to change the creditor's contact phone number. Amended Proof of
Claim 2-2.

Michelle Lee, Esq. ("Ms. Lee") indicated that she would convert the Debtor's case
pursuant to chapter 7 of the Bankruptcy Code ("Chapter 7"). *Id.* at ¶ 7.

Shortly after the November Hearing, Ms. Lee and Mr. Helali's counsel, Daniel Seff
("Mr. Seff"), agreed, on behalf of their clients, to a mediation prior to the Debtor's
planned conversion to Chapter 7. *Id.* at ¶ 8. On January 13, 2023, attorney Gary F. Seitz,
Esq. ("Mr. Seitz") agreed to serve as the mediator. *Id.* at ¶ 10.

Mr. Helali, the Debtor, and Mr. Cardillo attended the mediation session that took
place via Zoom video conference on March 23, 2023 ("Mediation Session"). *Id.* at ¶¶ 11,
13-15. The Mediation Session began at 12:00 PM and lasted until approximately 7:30
PM. *Id.* at ¶ 12. Mr. Helali was represented by Mr. Seff and the Debtor was represented
by Ms. Lee during the Mediation Session. *Id.* at ¶¶ 13, 14.

At the conclusion of the Mediation Session, Mr. Helali, the Debtor, and Mr. Cardillo
signed a two-page, single-spaced typewritten document with eleven numbered paragraphs
entitled, the "Settlement Term Sheet."[2] *Id.* at ¶ 15.

Pursuant to the Settlement Term Sheet, Mr. Cardillo promised to pay Mr. Helali
$18,000 over a period of 36 months in exchange for Mr. Helali dropping the Defamation
Lawsuit against the Debtor. Settlement Term Sheet at 1. In exchange for Mr. Helali
dropping the Defamation Lawsuit against her, the Debtor agreed, *inter alia*, to assist with
removing online statements she made about Mr. Helali and to never disparage Mr. Helali
again. *Id.* The parties also agreed, *inter alia*, to never contact each other or discuss their
relationship with each other online or on social media and to a general mutual release of
all existing legal claims against each other. *Id.* at 1–2.

---

[2] The Settlement Term Sheet was provided to the Court via email on April 18, 2023. Pursuant to the parties'
confidentiality clause, the Court will only describe relevant portions of the Settlement Term Sheet.

On March 24, 2023, Mr. Seitz filed his mediator's certificate of compliance in which

he certified that "[a] settlement of this matter **has** been reached" and that:

> [a] confidential settlement term sheet setting forth the material terms was signed
> by all parties. Counsel for the parties will prepare a confidential settlement
> agreement and file a stipulation regarding the resolution of pending matters in
> bankruptcy court with the Clerk of Court.

ECF No. 54 Certificate of Compliance (emphasis in the original).

The same day, Ms. Lee emailed Mr. Seff and Mr. Seitz, stating that she was "working

with [the] Debtor" because the Debtor was "having anxiety issues related to the

settlement." Seff Decl. ¶ 19.

On March 27, 2023, Ms. Lee and Mr. Seff exchanged a number of emails with Ms.

Lee initiating the email exchange with an email to Mr. Seff and Mr. Seitz stating that the

"Debtor rejects the mediation settlement" and that the Debtor would proceed with a

conversion of the case to Chapter 7. *Id.* at ¶¶ 20, 21, 22. In response, Mr. Seff emailed

Ms. Lee stating that "[l]ocal [r]ule 9019-2(n)(6) requires at least one of the parties to file

a motion for court approval of the mediated settlement…" *Id.* at ¶ 23. Moreover, Mr. Seff

asked Ms. Lee whether she was refusing to file a motion for court approval and noting

that, if she intended to refuse to file a motion for court approval, he had no choice but to

file a motion to enforce the settlement. *Id.*

Ms. Lee then responded by email and stated that the Debtor did not consent to the

filing of a motion to approve the settlement. *Id.* at ¶ 24. Ms. Lee stated that the Settlement

Term Sheet was confidential and, in order to enforce the Settlement Term Sheet, Mr.

Helali needed the Court's approval and a final settlement document, which required, *inter*

*alia*, other boilerplate and release language that had not yet been included in the

Settlement Term Sheet. *Id.*

On April 11, 2023, Mr. Seff emailed Ms. Lee to inquire whether the Debtor and Mr.

Cardillo accepted the binding nature of the Settlement Term Sheet. *Id.* at ¶ 29. On April

13, 2023, Mr. Seff left a voicemail for Ms. Lee and sent her an email asking if the Debtor

and Mr. Cardillo would honor the Settlement Term Sheet. *Id.* at ¶ 30. Ms. Lee responded

the same day via email asserting that Debtor would not agree to the Settlement Term

Sheet; the only way to resolve this matter would be for Mr. Helali to file an adversary

proceeding; the Court has no jurisdiction over Mr. Cardillo; and the Settlement Term

Sheet is not a final agreement. *Id.* at ¶ 31.

On April 17, 2023, Mr. Helali filed a motion to enforce the Settlement Term Sheet

("Motion to Enforce"). ECF 56 Motion to Enforce. In support of his Motion to Enforce,

Mr. Helali filed, *inter alia*, a declaration from Mr. Seff. ECF 56, Seff Decl. In the Motion

to Enforce, Mr. Helali asserted that the Settlement Term Sheet did not discuss revocation,

the Debtor's counsel repeatedly referred to the parties' agreement as a settlement, and the

Debtor's post-mediation remorse should be irrelevant. ECF 56 at 6, 7. Moreover, Mr.

Helali argued that the Settlement Term Sheet's arbitration clause and mutual release are

enforceable. *Id.* at 7, 8. Based on the foregoing, Mr. Helali asked the Court to enter an

order requiring the Debtor to uphold the Settlement Term Sheet because it is a binding

contract. *Id.* at 9.

Also on April 17, 2023, Mr. Helali served the Motion to Enforce on Ms. Lee,

Kenneth E. West, the Chapter 13 Trustee, and the United States Trustee via CM/ECF.

ECF 56 Certificate of Service. The same day, the Motion to Enforce was served on

Synchrony Bank via USPS First-Class Mail. *Id.* Responses to the Motion to Enforce were

due by May 1, 2023. ECF 57 Notice of Motion. On May 11, 2023, Mr. Helali filed a certificate of no response to the Motion to Enforce. ECF 60 Certificate of No Response.

On May 15, 2023, Ms. Lee filed a limited objection ("Limited Objection"), ECF 63 Limited Objection, and a motion to withdraw as counsel ("Motion to Withdraw") for the Debtor, ECF 67 Motion to Withdraw. In the Limited Objection, Ms. Lee averred that her relationship with the Debtor "became irrevocably destroyed" due to certain language in Mr. Helali's Motion to Enforce and that Mr. Helali's "inclusion of [] confidential emails [in the Motion to Enforce] … forever damaged [Ms. Lee's] relationship with her client." Limited Objection ¶¶ 2, 5. Ms. Lee also noted that she did not represent Mr. Cardillo and the Court may not have jurisdiction over him. *Id.* at ¶ 5.

In her Motion to Withdraw, Ms. Lee stated that on April 30, 2023, prior to the deadline to file a response, although the Debtor and Ms. Lee "could not agree on a joint legal strategy," the Debtor wanted Ms. Lee to file a response to the Motion to Enforce, but Ms. Lee needed to speak to someone at the ethics hotline before filing such a response. Mot. to Withdraw ¶ 11. However, since April 30 was a Sunday, Ms. Lee determined that she would call the ethics hotline the following week. *Id.* Moreover, Ms. Lee stated that the Debtor had read the Motion to Enforce. *Id.* at ¶ 10.

Shortly following a hearing in this Court on May 16, 2023 ("May Hearing"), in which the Court expressed concern that Mr. Cardillo had not been served with the Motion to Enforce, Mr. Helali served the Motion to Enforce on Mr. Cardillo via USPS Priority Mail on May 17, 2023. ECF 71 Certificate of Service. On May 24, 2023, Leslie Beth Baskin, Esq. ("Ms. Baskin") entered a notice of appearance on behalf of Mr. Cardillo. ECF 73 Notice of Appearance. On May 25, 2023, Samantha Lednicky, Esq. ("Ms. Lednicky")

filed a motion to appear pro hac vice on behalf of the Debtor ("Motion to Appear"). ECF 74 Mot. to Appear.

On May 30, 2023, Mr. Cardillo submitted a response to the Motion to Enforce ("Cardillo Response") where he admitted that he had signed the Settlement Term Sheet but argued that it could not be enforced against him because he was not represented during the Mediation Session, ECF 76 Cardillo Response at 1, and the fact that Mr. Seitz filed a certificate of compliance did not mean that an agreement had been reached, *id.* at 6. Moreover, Mr. Cardillo argued that the Settlement Term Sheet was not a binding contract but rather "an agreement to enter into a binding contract in the future" which alone did not constitute a contract. *Id.* at 4. Mr. Cardillo asserted that, because default and cure provisions were not present in the Settlement Term Sheet, the agreement was unenforceable. *Id.* at 4, 5.

Also on May 30, 2023, the Debtor submitted a response to the Motion to Enforce ("Debtor's Response") averring that she is not bound by the Settlement Term Sheet and denying Mr. Helali's claims in the Defamation Lawsuit, stating that Mr. Helali had "offered her alcohol beverages at a party and then had sex with her, [which was] [] sexual assault ..." ECF 77 Debtor's Response at 1. With respect to her failure to file a timely response, the Debtor averred that she should not be punished for Ms. Lee's mistake under the doctrine of excusable neglect and argued that she should have an opportunity to be heard. *Id.* at 4–5. Moreover, the Debtor averred that granting the Motion to Enforce without giving her an opportunity to be heard would be the equivalent of a default judgment. *Id.* at 6. The Debtor also stated that "Local Rule 9019-2(n)(6) requires the

parties to prepare and file a stipulation of their mediated settlement" and that no such stipulation had been filed. *Id.* at 7.

With respect to the Settlement Term Sheet, the Debtor noted that she was told that mediation is a non-binding process. *Id.* at 8. The Debtor also argued that material terms of the agreement were missing, such as a choice of law provision and enforcement language (other than the arbitration language), and that the payment term involved a non-party—Mr. Cardillo—who was only there for emotional support such that there was no mutual assent regarding the material terms of the contract. *Id.* at 8–9. Finally, the Debtor averred that the Settlement Term Sheet was akin to a "gag-order" on the Debtor. *Id.* at 9.

On May 31, 2023, the Court granted Ms. Lednicky's Motion to Appear so that she could appear on behalf of the Debtor. ECF 79 Order.

On June 12, 2023, Mr. Helali submitted a reply to the Cardillo Response ("Reply to Cardillo Response") arguing that the Settlement Term Sheet was a binding contract even if the parties intended to draft a more formal agreement at a later date and that the terms of the Settlement Term Sheet were sufficiently definite to be enforceable. ECF 82 Reply to Cardillo Response at 1, 3. Moreover, Mr. Helali averred that the fact that Mr. Cardillo was not represented by counsel during the Mediation Session was not relevant because courts in Pennsylvania routinely enforce agreements against unrepresented parties. *Id.* at 4. Mr. Helali also argued that there was sufficient consideration from Mr. Cardillo to render the Settlement Term Sheet enforceable because there does not need to be consideration running directly to the payor (Mr. Cardillo) for an agreement to be enforceable such that Mr. Cardillo paying money to Mr. Helali to release the Debtor from liability was sufficient consideration. *Id.* at 5. Lastly, Mr. Helali argued that, even if the

Settlement Term Sheet was not a binding and enforceable contract, the law of detrimental reliance would make enforceable Mr. Cardillo's 'promise' to pay Mr. Helali $18,000. *Id.*

Also on June 12, 2023, Mr. Helali submitted his reply to the Debtor's Response ("Reply to Debtor's Response"). ECF 83 Reply to Debtor's Response. First, Mr. Helali argued that the Debtor had not demonstrated excusable neglect because the breakdown of the attorney-client relationship does not constitute excusable neglect and he reiterated that the Settlement Term Sheet was a binding and enforceable contract. *Id.* at 2–3. Second, Mr. Helali asserted that the Debtor's allegation in Debtor's Response that he raped her violated the non-disparagement clause in the Settlement Term Sheet. *Id.* at 5. Finally, Mr. Helali argued that Debtor's argument that the Settlement Term Sheet impinges on her freedom of speech mischaracterizes the Settlement Term Sheet and that that argument had been inadequately briefed by the Debtor such that it should be deemed waived. *Id.* at 6.

On June 14, 2023, the Court granted Ms. Lee's Motion to Withdraw. ECF 85 Order Granting Motion to Withdraw.

On June 21, 2023, Mr. Cardillo filed a supplemental letter brief in response to the Reply to the Cardillo Response ("Supplemental Brief") and subsequently an amended supplemental brief ("Amended Supplemental Brief"). ECF 87 Suppl. Brief; ECF 88 Amended Suppl. Brief. In his Supplemental Brief, Mr. Cardillo noted that he is not a party to this bankruptcy case and characterized his involvement in the Mediation Session as "pop[ping] in" because "he worked from home and the mediation was conducted remotely[.]" Suppl. Brief at 1. First, Mr. Cardillo averred, without citing caselaw, that, because he lacked legal counsel at the Mediation Session, the Settlement Term Sheet

"was devoid of the key terms necessary to fully define" his obligations and thus the terms were not sufficiently definite to be enforceable. *Id.* at 2–3. Mr. Cardillo also argued that the Settlement Term Sheet did not contain sufficient consideration because Mr. Cardillo would pay $18,000 without receiving anything in return. *Id.* at 4.

On June 27, 2023, the Court held a hearing to consider the Motion to Enforce, the Debtor's Response, the Cardillo Response, the Reply to Debtor's Response, and the Reply to Cardillo Response ("June Hearing"). ECF 89. At the June Hearing, the Court indicated that the Settlement Term Sheet is subject to the strictures of Bankruptcy Rule 9019, and thus directed Mr. Helali to submit a motion pursuant to Bankruptcy Rule 9019 within the next 30 days.

On July 12, 2023, Ms. Baskin filed a motion to withdraw ("Baskin Motion to Withdraw"), stating that she and Mr. Cardillo had "fundamental differences" regarding his representation in this matter and requested to withdraw from this case for "good cause" pursuant to Pa. Rule of Professional Conduct 1.16(b). ECF 92 Mot. to Withdraw at 4.

On July 18, 2023, Ms. Lednicky filed a motion to withdraw ("Lednicky Motion to Withdraw") as counsel for the Debtor, asserting that the Debtor wished to proceed pro se in this bankruptcy proceeding and requested an expedited hearing on the matter. ECF 93 Mot. to Withdraw at 2.

On July 20, 2023, the Court entered an order granting Ms. Lednicky's request for an expedited hearing ("Hearing Order"). ECF 94. In relevant part, the Hearing Order required Ms. Lednicky to serve "all [] parties in interest, including all creditors, by

regular mail" with notice of the Lednicky Motion to Withdraw and the related hearing. *Id.*

On July 24, 2023, Mr. Helali filed a motion to approve the Settlement Agreement under Bankruptcy Rule 9019 ("9019 Motion"). ECF 96 9019 Motion. First, Mr. Helali asserted that Pennsylvania law applies to the Settlement Term Sheet. *Id.* at 5. Second, Mr. Helali reiterated that the Settlement Term Sheet is a binding contract that should be enforced by this Court. *Id.* at 5–9. Third, applying the four *Martin*[3] factors, Mr. Helali argued that approval of the Settlement Term Sheet is in the best interests of the estate. *Id.* at 9. According to Mr. Helali, because he is likely to succeed in the Defamation Lawsuit given the Debtor's false allegations against Mr. Helali, the Court should approve the Settlement Term Sheet. *Id.* at 9, 10. Mr. Helali also averred that the second factor was moot because the Settlement Term Sheet provided for payments from Mr. Cardillo to Mr. Helali and thus there would not be difficulties collecting the judgment from the Debtor. *Id.* at 10. With respect to the third factor, Mr. Helali asserted that the Defamation Lawsuit continues to have complex issues and would require a lot of expensive discovery such that the Settlement Term Sheet should be approved to avoid the expense and inconvenience of continuing to trial in the U.S. District Court in Vermont. *Id.* With respect to the final factor, Mr. Helali argued that approving this Settlement Term Sheet is in the best interests of the estate because this agreement preserves the Debtor's other assets for distribution to creditors other than Mr. Helali. *Id.* at 10-11. Finally, Mr. Helali requested that the Court retain jurisdiction over the Settlement Term Sheet because Mr. Helali had expended tremendous resources in this bankruptcy proceeding and remained

---

[3] *Myers v. Martin (In re Martin)*, 91 F.3d 389 (3d Cir. 1996).

concerned about the Debtor's and Mr. Cardillo's willingness to honor the Settlement

Term Sheet if approved. *Id.* at 11, 12.

On August 8, 2023, the Court held a hearing to consider the Baskin Motion to

Withdraw and the Lednicky Motion to Withdraw. ECF 101; ECF 102. Based upon Mr.

Cardillo's failure to object and appear at the hearing, the Court granted the Baskin

Motion to Withdraw, allowing Ms. Baskin to withdraw from representing Mr. Cardillo,

ECF 100 Order, but continued the hearing with respect to the Lednicky Motion to

Withdraw because Ms. Lednicky had failed to send notice to all of the Debtor's creditors

and parties in interest as required by the Hearing Order. ECF 101. Subsequently, the

Court granted the Lednicky Motion to Withdraw after she properly served the Lednicky

Motion to Withdraw on all creditors. ECF 106, 110.

On August 14, 2023, Mr. Helali filed a certificate of no response related to his 9019

Motion. ECF 104. On August 23, 2023, the Court held a hearing on the Motion to

Enforce and the 9019 Motion. ECF 107; ECF 108. Neither the Debtor nor Mr. Cardillo

appeared at the hearing. This matter is now ripe for disposition.

## III.    DISCUSSION

### A.  Applicable Legal Principles

#### i.  Pennsylvania Contract Law

Settlement agreements reached through mediation are as binding as those reached

through litigation. *In re BG Petroleum, LLC*, 525 B.R. 260, 270 (Bankr. W.D. Pa. 2015)

(citing *D.R. by M.R. v. East Brunswick Bd. of Educ.,* 838 F. Supp. 184, 190 (D.N.J.1993)

("The fact that this [a]greement was reached during mediation does not in and of itself

diminish the effect of the [a]greement, or make it any less of a binding contract. To so

hold would create a hierarchy of settlement agreements where some are deemed binding while others are not determinable merely by whether they were reached during mediation or during litigation. Such a rule would create confusion and indefiniteness as to the effect of a settlement agreement. Accordingly, it may have a chilling effect on the use of such agreements as parties would never know whether the matter was finally resolved.")).

Moreover, settlement agreements are interpreted as binding contracts. *Standard Steel, LLC v. Buckeye Energy, Inc.*, Civ. Act. No. 04-538, 2005 U.S. Dist. LEXIS 22378 at *23, 2005 WL 2403636 at *9 (W.D. Pa. Sept. 29, 2005). *See also Enterprise Energy Corp. v. United States, (In re Columbia Gas Systems, Inc.)* 50 F.3d 233, 238 (3d Cir.1995). Thus, settlement agreements are construed according to traditional principles of contract law. *Coltec Industries v. Hobgood*, 280 F.3d 262, 269 (3d Cir.2002) (citing *In Re Cendant Corp. Prides Litig.*, 233 F.3d 188, 193 (3d Cir. 2000) ("[b]asic contract principles ... apply to settlement agreements..."). Under Pennsylvania law, "the test for enforceability of an agreement is whether both parties have manifested an intention to be bound by its terms and whether the terms are sufficiently definite to be specifically enforced." *Channel Home Ctrs. v. Grossman,* 795 F.2d 291, 298–99 (3d Cir. 1986).

### ii.  Federal Rule of Bankruptcy 9019

Bankruptcy Rule 9019(a) provides that:

> [o]n motion by the trustee and after notice and a hearing, the court may approve a compromise or settlement. Notice shall be given to creditors, the United States trustee, the debtor, and indenture trustees as provided in Rule 2002 and to any other entity as the court may direct.[4]

---

[4] The language in Bankruptcy Rule 9019 says that a court "may" approve a settlement. Courts have adopted differing views on whether a motion under Bankruptcy Rule 9019 is required to approve a settlement. *See e.g., In re Telesphere Commc'ns*, 179 B.R. 544, 551–52 (Bankr. N.D. Ill. 1994); *In re Dalen*, 259 B.R. 586, 595 (Bankr. W.D. Mich. 2001). This Court is persuaded that all compromises are subject to court approval under Bankruptcy Rule 9019(a) and that the permissive language, "may," refers to the court's discretion to approve or reject a proposed

Settlements under Bankruptcy Rule 9019 are favored in bankruptcy as they avoid the expenses associated with litigating claims that can prove burdensome and expensive for the bankruptcy estate. *United States v. Alaska Nat'l Bank of the North (In re Walsh Constr., Inc.),* 669 F.2d 1325, 1328 (9th Cir. 1982); *John S. Marandas, P.C. v. Bishop (In re Sassalos),* 160 B.R. 646, 653 (D. Ore. 1993).

The considerations a court looks at in approving a settlement are entirely different from the considerations informing whether there was an agreement at all and "[t]his court will not rescind a settlement agreement merely because one party knows it made a bad bargain." *In re United Shipping Co.,* No. 4–88–533, 1989 WL 12723, at *8 (D. Minn. Feb. 17, 1989). *See also* 10 Alan N. Resnick & Henry J. Sommer, *Collier on Bankruptcy* ¶ 9019.02 (16th ed. 2023) ("In addition, a trustee or debtor in possession can be compelled to file a motion to approve a compromise or settlement even if the trustee or debtor in possession has changed its mind.").

### B.  The Court will not consider the Debtor's Response to the Motion to Enforce because the Debtor Failed to Submit a Timely Objection.

Although the excusable neglect doctrine may excuse a party's failure to meet a deadline due to reasonable circumstances beyond his or her control, the Debtor's failure to file a timely response due to disagreements with Ms. Lee does not constitute excusable neglect.

---

settlement based on the best interest of the estate. *See Rafool v. The Goldfarb Corp. (In re Fleming Packaging Corp.*), No. 03-82408, 2008 WL 682428, at *3 (Bankr. C.D. Ill. Mar. 7, 2008). Accordingly, "… the resolution of an estate claim … is not enforceable if effected outside the ordinary course of the debtor's business, unless the [parties] first obtain[] court authorization to enter into the agreement." *Salim v. Nisselson (In re Big Apple Volkswagen, LLC)*, No. 11-11388 (JLG), 2016 WL 3034744, at *5 (Bankr. S.D.N.Y. May 19, 2016), *aff'd*, 571 B.R. 43 (S.D.N.Y. 2017).

The U.S. Bankruptcy Court for the Eastern District of Pennsylvania's Local

Bankruptcy Rule 9014 ("Local Bankruptcy Rule 9014") provides that:

> … a response or objection to a motion shall be filed and served on the movant, or
> if the movant is represented, counsel for the movant, no later than 14 days after
> the date on which the movant serves the motion."[5]

Local Rule 9014-3(h).

Local Bankruptcy Rule 9014 also provides that:

> [i]f a response or objection is required to be filed and no timely response or
> objection is filed, the movant may file a certification of no response with the court
> and, unless a hearing is required under the Federal Rules of Bankruptcy
> Procedure, may request that the court grant the relief requested in the motion
> without a hearing.

Local Rule 9014-3(k).

Federal Rule of Bankruptcy Procedure 9006 ("Bankruptcy Rule 9006") is a "general

rule governing the computation, enlargement, and reduction of periods of time prescribed

in other bankruptcy rules." *See generally* Fed. R. Bankr. P. 9006; *Pioneer Inv. Servs. Co.

v. Brunswick Assocs. Ltd. P'ship,* 507 U.S. 380, 382 (1993). Bankruptcy Rule 9006(b)(1)

provides that:

> … the court for cause shown may at any time in its discretion (1) with or without
> motion or notice order the period enlarged if the request therefor is made before
> the expiration of the period originally prescribed or as extended by a previous
> order or (2) on motion made after the expiration of the specified period permit the
> act to be done where the failure to act was the result of excusable neglect.

---

[5] The Debtor argues that because Mr. Cardillo had not been properly served with Mr. Helali's Motion to Enforce
until May 17, 2023, the 14-day period to respond to that motion cannot be deemed to have started for both the
Debtor and Mr. Cardillo on April 17, 2023. Local Bankruptcy Rule 9014's language provides that the response or
objection shall be filed and served on the movant no later than 14 days after the movant serves the motion. Mr.
Helali served the Debtor's counsel with the Motion to Enforce on April 17, 2023, and the Debtor had read that
motion by at least April 30, 2023, prior to the response deadline of May 1, 2023. Yet, the Debtor failed to file a
response within the 14-day period or a motion seeking additional time to respond. That Mr. Cardillo's time to file a
response was tolled because he was not properly served with the Motion to Enforce until May 17, 2023, does not
also toll the time for the Debtor to respond. Consequently, the Debtor failed to file a timely response when she filed
her response on May 15, 2023, rather than by the deadline—May 1, 2023.

Here, the Debtor argues that she should be granted permission to object to the Motion to Enforce under the doctrine of excusable neglect. Bankruptcy Rule 9006(b)(1)'s "excusable neglect" refers to two separate concepts: (1) "excusable" and (2) "neglect." Analyzing "neglect" first, the word "neglect" empowers courts to "accept late filings caused by inadvertence, mistake, or carelessness, as well as by intervening circumstances beyond a party's control." *Pioneer Inv. Servs. Co.,* 507 U.S. at 388 (interpreting Congress's intention when passing the rule). To determine if the late filing is "excusable," the Court can consider all the relevant circumstances, including, the danger of prejudice to the debtor, the length of the delay and its potential impact on judicial proceedings, the reason for the delay, including whether it was within the reasonable control of the movant, and whether the movant acted in good faith. *Id.* at 395.[6] An attorney's failure to file in a timely manner alone is not considered "excusable." *Id.* at 396. Even if the late filing is the fault of the Debtor's counsel, the Debtor must be held accountable for the acts and omissions of his or her attorney. *Id.*

Because Ms. Lee did not abandon the Debtor nor fail to communicate with the Debtor, the assertion that the attorney-client relationship deteriorated is inadequate to demonstrate excusable neglect. *See U.S. v. Dennis*, 31 F. Supp. 3d 652, 657 (D.N.J. 2014). Here, Ms. Lee was in constant contact with the Debtor during the relevant time period so that cannot be a basis for demonstrating excusable neglect. In *Dennis*, the court, in analyzing the reason for the delay in filing the defendant's motion, held that the

---

[6] The Court observes the Debtor has not briefed these particular factors aside from the reason for the late filing, leaving the Court unable to address the remaining factors. *See, e.g., United States v. Alonso*, 48 F.3d 1536, 1544 (9th Cir. 1995) ("an issue merely 'adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation'" is insufficient.).

defendant did not establish excusable neglect because the defendant was aware of the short timeline but failed to work with his new counsel in filing the motion. *Id.* at 657–58. Additionally, late filings attributable to disagreements concerning legal strategies and tactical decisions generally are not found to be excusable. *See Afr. Am. Voting Rts. Legal Def. Fund, Inc. v. Villa*, 54 F.3d 1345, 1350 (8th Cir. 1995).

Here, the Debtor was aware of the Motion to Enforce, but she and her counsel had a disagreement about the legal strategy in this case which resulted in the Debtor's counsel failing to file a response by the deadline. No reason has been offered explaining why Debtor or Debtor's counsel could not have filed a timely request for an extension of time to respond to the Motion to Enforce. Ultimately, as in *Dennis*, the Debtor has not established excusable neglect because despite the issues she was experiencing working with her counsel, she conceded that she had read the Motion to Enforce prior to the deadline for responding, but still failed to take appropriate action to ensure a response was timely filed or to file a request for additional time to respond. Therefore, based upon the principles *supra*, the Court finds no merit in the Debtor's contention that under the circumstances here Ms. Lee's failure to file a timely response should allow the Debtor to now object to the Motion to Enforce.[7]

### C.  The Settlement Term Sheet is a Binding Contract.

The existence of a contract requires: (i) that both parties manifested an intention to be bound by the agreement; (ii) that the terms of the agreement are sufficiently definite to be

---

[7] Even if the Debtor had filed a timely objection to the Motion to Enforce, the Debtor's argument has no merit. The Debtor argues that, even though the mediated Settlement Term Sheet appears to be a contract, it is a negotiation between parties with the intent to execute a binding contract in the future. However, as stated in detail *infra*, the Settlement Term Sheet is a binding contract because the parties mutually assented to the Settlement Term Sheet, the terms are sufficiently definite to be enforceable, and each party provided sufficient consideration.

enforced; and (iii) that there was consideration. *Abdul-Rahman v. Chase Homes Finance Co., LLC*, Civ. Act. No. 13–5320, 2014 WL 3408564, at *2 (E.D. Pa. July 11, 2014).

### i. The parties manifested an intention to be bound by the Settlement Term Sheet.

"As with any other contract, an agreement to settle a lawsuit binds a party if he [or she] voluntarily entered into it." *Jordan v. Continental Airlines*, Civ. Act. No. 94-5098, 1996 WL 571812, at *3 (E.D. Pa. Oct. 1, 1996), *aff'd*, 135 F.3d 764 (3d Cir. 1997). "Such an agreement is binding even if one of the parties to it has a change of heart shortly after assenting to its terms." *Id.* "[T]he fact that [the parties] intend[ed] to formalize their agreement … [later] but have not yet done so does not prevent enforcement" of the Settlement Term Sheet. *Pisarz v. PPL Corp.*, 604 F. App'x 196, 201 (3d Cir. 2015). Here, after approximately seven hours of mediation, the parties voluntarily entered into the agreement and signed the completed Settlement Term Sheet such that they "mutually assent[ed] to the terms and conditions of the settlement." *Roscoe v. Watco Companies LLC*, Civ. Act. No. 15-cv-2118, 2018 WL 8345101, at *4, 7 (E.D. Pa. Nov. 9, 2018) (internal citation omitted) (concluding that a binding contract was created where after nine hours of mediation the parties assented to the terms and conditions of the settlement agreement, voluntarily entered into the agreement, and signed the completed term sheet).

Moreover, Pennsylvania law, as applied both in state courts and in federal courts, is clear that neither the failure to read a document nor the lack of understanding of its terms is a defense to the enforceability of the document. *Lehigh Valley Hospital v. Dietrich (In re Dietrich)*, 595 B.R. 59, 64 (Bankr. E.D. Pa. 2018); *Bollinger v. Central Pennsylvania Quarry Stripping & Construction Co.*, 425 Pa. 430, 432, 229 A.2d 741, 742 (1967) ("Once a person enters into a written agreement he builds around himself a stone wall,

from which he cannot escape by merely asserting he had not understood what he was

signing."). Moreover, the lack of independent legal counsel is not sufficient to find a

contract unenforceable. *See Simeone v. Simeone*, 525 Pa. 392, 400–01, 581 A.2d 162,

165–66 (1990) (finding prenuptial agreement that was signed by both parties enforceable

regardless of fact that one spouse did not consult with independent legal counsel). Based

upon these principles, the Court finds no merit in Mr. Cardillo's contention that the

Settlement Term Sheet should be declared void on the grounds that he was not

represented by counsel during the Mediation Session. Accordingly, it is clear that all the

parties manifested an intention to be bound by the Settlement Term Sheet by voluntarily

signing it after the Mediation Session.

> **ii.  The material terms of the Settlement Term Sheet are sufficiently
> definite to be enforced because the parties intended to enter into an
> agreement which contains specific terms and if any party should
> default, the parties have remedies under Pennsylvania law.**

When the terms of a contract are clear and unambiguous, the intent of the parties is to

be ascertained from the document itself. *Hutchison v. Sunbeam Coal Corp.*, 513 Pa. 192,

519 A.2d 385, 390 (1986). An agreement is sufficiently definite to be enforceable as a

contract if the parties intended to make a contract and there is a reasonably certain basis

upon which a court can provide an appropriate remedy. *Greene v. Oliver Realty, Inc*., 363

Pa. Super. 534, 539, 526 A.2d 1192, 1194 (1987).  "[T]he omission of an essential term

in a contract, such as price, does not vitiate contract formation if the parties otherwise

manifested their mutual assent to the agreement and the terms of that agreement are

sufficiently definite." *Fleming Steel Co. v. Jacobs Eng'g Grp., Inc.*, 373 F. Supp. 3d 567,

590 (W.D. Pa. 2019) (internal citations omitted). "However, '[w]here ... there is no

agreement or even a discussion as to any of the essential terms of an alleged bargain,

such as time or manner of performance, or price or consideration, the 'agreement' is too indefinite for a party to reasonably believe that it could be enforceable in an action at law.'" *Id.* (internal citations omitted).

The material terms in the Settlement Term Sheet include, *inter alia*:

- Mr. Cardillo's payment of $18,000 to Mr. Helali over a period of 36 months;

- The Debtor's agreement to assist in removing her online comments regarding Mr. Helali;

- Mr. Helali's agreement to dismiss the Defamation Lawsuit against the Debtor;

- A confidentiality clause;

- A non-disparagement clause; and

- A mutual release of all claims by the parties.

In *Roscoe*, the court found that the parties had entered into a binding settlement agreement with sufficiently definite terms because they "mutually assent[ed] to the terms and conditions of the settlement" which included that the defendants would pay the plaintiff $275,000 in exchange for the plaintiff's agreement to settle and discharge his pending civil claim and National Labor Relations Board claim against the defendants. *Roscoe,* 2018 WL 8345101, at *4, 7. Here, Mr. Cardillo agreed to pay Mr. Helali a specific sum of money, $18,000, over 36 months in exchange for Mr. Helali dropping the Defamation Lawsuit against the Debtor, as in *Roscoe*. Moreover, the Settlement Term Sheet provides for confidentiality, non-disparagement, and a general mutual release of all claims. *See Thomas v. Lockhead Martin Aeroparts, Inc.*, Civ. Act. No. 3:13–166, 2015 WL 1285822 at *4 (W.D. Pa. Mar. 20, 2015) (finding settlement agreement enforceable

where term sheet provided specific monetary amount to be rendered to plaintiff and
provided for confidentiality, non-disparagement, and a "full and general release").

Although there is no language regarding what would occur in the event of default or
the need to cure a default, the Court finds this is of no moment because the parties clearly
intended to enter into the Settlement Term Sheet by voluntarily participating in the
Mediation Session and signing the document, *Roscoe*, 2018 WL 8345101, at *7
(concluding that the settlement was enforceable because the parties "voluntarily enter[ed]
into the agreement, and sign[ed] the completed [t]erm [s]heet"), and there is a reasonably
certain basis for a remedy in the event of default by any party, *Moses Taylor Found. o/b/o
Moses Taylor Hosp. v. Coverys*, No. 21-3264, 2023 WL 2906179, at *2 (3d Cir. Apr. 12,
2023) ("Pennsylvania law recognizes both legal and equitable remedies for breach of
contract claims.").

Therefore, the Court finds that the language of the material terms is sufficiently
precise and definite to render the Settlement Term Sheet enforceable.

### iii.  All parties provided sufficient consideration to support the enforceability of the Settlement Term Sheet.

Consideration is defined as "a benefit to the party promising, or a loss or detriment to
the party to whom the promise is made." *Pennsylvania Env't Def. Found. v.
Commonwealth*, 255 A.3d 289, 305 (Pa. 2021) (internal citations omitted). The Debtor
promised, *inter alia*, that she would not disparage Mr. Helali again and she would assist
with the removal of certain statements made online in exchange for Mr. Helali dropping
the Defamation Lawsuit against her. Mr. Cardillo promised he would pay Mr. Helali
$18,000 over a period of 36 months in exchange for Mr. Helali agreeing to drop the
Defamation Lawsuit against Mr. Cardillo's wife, the Debtor. The parties also agreed to a

general mutual release of all existing claims. Based on the foregoing, the Court finds that there is sufficient consideration to enforce the Settlement Term Sheet because "[a] benefit to a third person is sufficient consideration to sustain a promise." *Bucks Cnty. Bank & Tr. Co. v. DeGroot*, 226 Pa. Super. 419, 424, 313 A.2d 357, 359 (1973) (finding sufficient consideration to enforce an agreement where two parties agreed that the bank would use their loan payments to benefit a third party, their friend). *See also Blake-Cadillac Oldsmobile, Inc. v. Cackovic*, 54 Pa. D. & C.2d 160, 165 (Pa. Ct. Com. Pl. 1971).

Accordingly, the Settlement Term Sheet is a binding contract on the parties to the extent provided by Pennsylvania law.[8] *White v. C.B. Hannay Co. (In re Lyons Transportation Lines, Inc.)*, 163 B.R. 474, 476 (Bankr. W.D. Pa.1994) (stating that absent fraud, a settlement agreement is binding pending bankruptcy court approval). Having found that the Settlement Term Sheet is a binding contract, the Court must now determine whether the Settlement Term Sheet is fair and equitable such that it should be approved pursuant to Bankruptcy Rule 9019(a).

### D. On balance, the *Martin* factors weigh in favor of approving the Settlement Term Sheet pursuant to Bankruptcy Rule 9019(a) and Local Bankruptcy Rule 9019-2(n).

Under Bankruptcy Rule 9019(a), a bankruptcy court has the authority to "approve a compromise or settlement." Fed. R. Bankr. P. 9019(a). Moreover, Local Bankruptcy Rule 9019-2(n)(6) provides that:

---

[8] The Debtor argued that this Court does not have jurisdiction over Mr. Cardillo. Yet, because the requirement of personal jurisdiction represents an individual right, it can, like other such rights, be waived. *Insurance Corp. of Ireland, Ltd. v. Compagnie des Bauxites de Guinee*, 456 U.S. 694, 703 (1982). Unlike subject-matter jurisdiction, under Fed. R. Civ. P. 12(h), "[a] defense of lack of jurisdiction over the person … is waived" if not timely raised in the answer or responsive pleading. Here, Mr. Cardillo's response to the Motion to Enforce did not raise the issue of jurisdiction, neither did his subsequent Supplemental Brief nor his Amended Supplemental Brief. That the Debtor asserted such an argument with respect to Mr. Cardillo in her brief is not relevant to determining whether Mr. Cardillo has waived this issue. Consequently, the actions of Mr. Cardillo indicate to this Court that he has waived this issue and has legally submitted to the jurisdiction of this Court. *Insurance Corp. of Ireland, Ltd.*, 456 U.S. at 704–05.

> [t]he mediator shall file a Mediation Report on the form provided by the Clerk within 14 days of the conclusion of the mediation. If the mediation results in an agreement for the resolution of the matter, the parties shall determine which of them will prepare the stipulation of settlement, have the stipulation of settlement executed, and file the requisite motion for court approval. A motion for court approval shall be filed no later than 30 days after the conclusion of the mediation or within such additional time as the court shall direct.

Although settlements are favored, "the unique nature of the bankruptcy process means that judges must carefully examine settlements before approving them." *In re Nutraquest, Inc.*, 434 F.3d 639, 644 (3d Cir. 2006). The Court must decide whether the settlement is "fair and equitable," *id.* (citation omitted), and "assess and balance the value of the claim that is being compromised against the value to the estate ... accept[ing] ... the compromise" by considering: "(1) the probability of success in litigation; (2) the likely difficulties in collection; (3) the complexity of the litigation involved, and the expense, inconvenience and delay necessarily attending it; and (4) the paramount interest of the creditors." *Myers v. Martin (In re Martin)*, 91 F.3d 389, 393 (3d Cir. 1996).

Analyzing first the probability of success in the Defamation Lawsuit, the Court concludes that this factor is neutral. Mr. Helali's complaint in the Defamation Lawsuit[9] alleges that the Debtor made false statements that Mr. Helali raped her, that Mr. Helali was dishonorably discharged from the military, that Mr. Helali was antisemitic, and that Mr. Helali was an abuser and had abandoned his child, among other things.[10] Proof of Claim Ex. A Compl. ¶¶ 52-59, 62, 66, 75, 78, 91, 92. In the 9019 Motion, Mr. Helali

---

[9] Under Vermont law, to make out a claim for defamation, a plaintiff must establish the following elements: (1) a false and defamatory statement concerning another; (2) some negligence, or greater fault, in publishing the statement; (3) publication to at least one third person; (4) lack of privilege in the publication; (5) special damages, unless actionable per se; and (6) some actual harm so as to warrant compensatory damages. *Lent v. Huntoon*, 143 Vt. 539, 546-47, 470 A.2d 1162, 1168 (1983) (footnote omitted).

[10] Mr. Helali initiated the Defamation Lawsuit in Vermont against the Debtor asserting defamation and defamation per se based upon certain written and oral statements the Debtor made about Mr. Helali from December 2018 through February 2021. Proof of Claim Ex. A Compl. ¶¶ 37–129, 152-165.

argued that he has a strong probability of succeeding in the Defamation Lawsuit because
there is evidence that the Debtor's statements about him were false, including the
Debtor's admission to the Sommerville, Massachusetts Police Department ("Sommerville
PD") that her sexual relations with Mr. Helali were consensual.[11] 9019 Motion at 10. At
least with respect to statements made regarding Mr. Helali's military service, Mr. Helali
has a strong probability of success in the Defamation Lawsuit because he received an
honorable discharge from the U.S. Military on October 14, 2015, Proof of Claim Ex. A
Compl. Ex. J at 2; therefore, the U.S. District Court in Vermont would likely find that the
Debtor's written online statements that Mr. Helali was dishonorably discharged are false.
However, with respect to the statements regarding rape, although the Debtor told the
Sommerville PD that she had consensual sex with Mr. Helali, it appears she believed that
Mr. Helali sexually assaulted her because she was allegedly tricked by Mr. Helali into
having unprotected sex. There is thus a dispute of fact in the Defamation Lawsuit that
would likely go before a jury, and as such, the Court finds that this factor, at least with
respect to the rape allegation, is inconclusive. *In re Open Medicine Institute, Inc.*, 639
B.R. 169, 176 (B.A.P. 9th Cir. 2022) (approving settlement where Debtor "had fairly low
chances of success in litigation" and "[t]he outcome of a trial … against the [defendants]
is uncertain, at best …").

Regarding any difficulties in collection, Mr. Helali averred that this factor is moot
because the Settlement Term Sheet provides that Mr. Cardillo—not the Debtor—will pay

---

[11] Mr. Helali alleges that in June 2019, the Debtor went to the Sommerville PD and informed them that she and Mr. Helali had consensual sex and that Mr. Helali had told her that he had a low sperm count and that she did not have to worry about getting pregnant. ECF 83 at 5. The Debtor also allegedly stated to the Sommerville PD that at a later time Mr. Helali said he did not have a low sperm count and wanted a child with her. *Id.* The Debtor reported the foregoing to the Sommerville PD under the belief that Mr. Helali's aforementioned conduct constituted a form of sexual assault. *Id.*

Mr. Helali. As of the petition date, the Debtor was currently unemployed and had limited

assets, as the only income cited in her Statement of Income is Mr. Cardillo's income.[12]

ECF 1 Voluntary Petition; ECF 12 at 1-3. Accordingly, it appears that, in the absence of

the Settlement Term Sheet, it would be difficult to collect any amount from the Debtor.

Given that Mr. Cardillo is to pay Mr. Helali $18,000 and Mr. Cardillo appears to have a

stable gross income of $14,895/month, ECF 12 Statement of Income at 1, Mr. Helali will

have much less difficulty collecting the funds pursuant to the Settlement Term Sheet than

if the Debtor had to pay any judgment resulting from the Defamation Lawsuit. *See In re*

*Frye*, 216 B.R. 166, 175 (Bankr. E.D. Va. 1997) ("collection would be twice as difficult

if the debtors were to prevail … and obtain a judgment for nearly $200,000 instead of a

settlement of $100,000"). *See also New Cingular Wireless Services Inc. v. McCormick*,

No. 2:07–cv–02213–MCE, 2008 WL 4283526, at *6 (E.D. Cal. Sept. 11, 2008) (finding

that the factor regarding collection weighed in favor of approving the settlement as to the

couple "given the couple's limited resources …").

    Regarding the complexity and cost of the litigation involved, Mr. Helali averred that

pursuing the Defamation Lawsuit would be expensive and complex primarily because

several fact witnesses who would be called to testify live outside of Vermont and because

discovery was stayed by this bankruptcy proceeding. In addition, the Defamation Lawsuit

contains complex legal issues related to defamation and defamation per se, and there are

various disputes of fact that would need to be resolved and additional discovery that must

be completed. *See* Proof of Claim 4-1 Ex. A Compl. The Settlement Term Sheet resolves

these issues because it provides that Mr. Helali will dismiss the Defamation Lawsuit in

---

[12] The Court has no basis to believe that these circumstances have changed.

exchange for payment from Mr. Cardillo and the removal of certain online statements by

the Debtor, *inter alia*. Settlement Statement at 1. Because lengthy and expensive

litigation would be detrimental to the Debtor's other creditors and the Settlement Term

Sheet resolves the outstanding legal issues between Mr. Helali and the Debtor, approving

the Settlement Term Sheet will result in savings for the Debtor's estate. *In re Grand Prix*

*Associates, Inc.*, No. 09–16545 (DHS), 2009 WL 1850966, at *7 (Bankr. D.N.J. June 26,

2009) (finding that the settlement would result in substantial savings to the Debtor's

estate given the complexity of the legal issues and the cost of expedited discovery and

defending other parties' objections).

Finally, with respect to the interest of creditors, Mr. Helali asserted that the

Settlement Term Sheet benefits the Debtor's other creditors primarily because the

payment to Mr. Helali will come from the Debtor's husband, Mr. Cardillo, rather than the

Debtor herself, such that the Debtor's assets are preserved for distribution to other

creditors. *Id.* at 10–11. Even if Mr. Helali's claim was only $18,000, rather than the

$525,000 he stated he was owed in his proof of claim, this is still one of the largest claims

in the Debtor's estate. Because the parties agreed on a lesser amount than the amount

asserted in Mr. Helali's proof of claim, the remaining creditors in the Debtor's case will

have a greater chance at recovering the amount owed to them by the Debtor. Therefore,

approving the Settlement Term Sheet is in the best interest of all the creditors.[13] *In re*

*Summit Metals, Inc.*, 477 F. App'x 18, 22 (3d Cir. 2012) (noting that "the exercise [of

---

[13] Notably, none of the other creditors in this case objected to the Settlement Term Sheet. *In re Schrock*, No. 90-40589-007, 1995 WL 462182, at *3 (Bankr. D. Mont. April 29, 1991) (considering the fact that none of the creditors objected to the settlement when finding that settlement was in best interest of creditors).

evaluating the paramount interest of the creditors] is all about maximizing value for creditors" despite creditors opposing settlement terms).

Based upon the preceding analysis, the Court concludes that, on balance, the *Martin* factors favor approving the Settlement Term Sheet.

## IV.    CONCLUSION

Based on the foregoing, the Court concludes that the Settlement Term Sheet is a binding contract and that such agreement is fair and equitable for the purposes of Bankruptcy Rule 9019. Therefore, it is **ORDERED** that the Motion to Enforce is **GRANTED** and the 9019 Motion is **GRANTED**. It is further **ORDERED** that the Court will retain jurisdiction over the Settlement Term Sheet, the Debtor, Mr. Cardillo, and Mr. Helali to ensure compliance with the terms of the Settlement Term Sheet and the orders of this Court. *See generally Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 381 (1994) (discussing that where "a provision 'retaining jurisdiction' over the settlement agreement or [] incorporating the terms of the settlement agreement in the order" is included a court would have "ancillary jurisdiction to enforce the agreement").

Date: September 14, 2023

_____

Honorable Ashely M. Chan
United States Bankruptcy Judge